Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| DEPARTAMENTO DE AGRICULTURA DE PUERTO RICO, MUNICIPIO DE LAJAS<br><br>Peticionarios<br><br>V.<br><br>HARRISON RAMÍREZ JUSINO, ASOCIACIÓN DE PESCADORES UNIDOS DE LA PARGUERA, INC.<br><br>Recurridos | KLCE202400672 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Germán<br><br>Caso Núm.: LJ2023CV00104<br><br>Sobre: Desahucio en Precario |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 15 de julio de 2024.

El 17 de junio de 2024, compareció ante este Tribunal de Apelaciones, el Departamento de Agricultura de Puerto Rico (en adelante, DAPR o parte peticionaria), mediante recurso de *Certiorari,* en el que recurre de la *Resolución* emitida el 11 de junio de 2024 y notificada el 12 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Germán. En virtud del aludido dictamen, el foro *a quo,* dejó sin efecto la Vista señalada para el 22 de julio de 2024.

Adelantamos que, por los fundamentos que adelante se esbozan, se expide el auto de *certiorari* y se revoca el dictamen recurrido. Consecuentemente, se devuelve el caso al foro de instancia para que **sin dilación alguna** proceda a calendarizar y celebrar la vista de desahucio sumario dentro del término de **diez (10) días** contado a partir de la notificación de esta Sentencia.

En lo que respecta a la reconvención interpuesta por la parte recurrida, por estar estrechamente relacionada con el pleito MZ2023CV00707, el foro primario deberá ordenar el traslado de la misma, a los fines de que se atienda de manera conjunta con dicho caso, que se ventila ante la Sala Superior de Mayagüez.

**I**

Los eventos procesales y fácticos que suscitaron la controversia de epígrafe son los que adelante se esbozan.

El 29 de agosto de 2023, el DAPR y el Municipio de Lajas (en adelante, la parte peticionaria) presentaron una *Demanda* de Desahucio en precario, en contra del señor Harrison Ramírez Jusino; y la Asociación de Pescadores Unidos de La Parguera, Inc. (en adelante, parte recurrida). En apretada síntesis, la parte peticionaria alegó que, el señor Ramírez Jusino ocupa un terreno que se encuentra arrendado por el DAPR a favor del Municipio; sin derecho alguno y sin el pago de un canon de arrendamiento. Lo anterior, en violación a las leyes de contratación gubernamental.

En apretada síntesis, la parte peticionaria alegó que, en virtud de la Ley para el Fomento y Desarrollo de la Industria Pesquera y la Acuicultura, Ley Núm. 61 de 23 de agosto de 1990, según enmendada, 5 LPRA sec. 1521 *et seq*, se le transfirieron al DAPR las propiedades de la Corporación para el Desarrollo y Administración de los Recursos Marinos, Lacustres y Fluviales de Puerto Rico (CODEMAR). Acotó que, entre dichas propiedades, figura La Villa Pesquera La Parguera –objeto del caso que nos ocupa– cuyo titular lo es el DAPR. Alegó que, el 16 de febrero de 2023, el DAPR y el Municipio suscribieron el contrato de arrendamiento número 2023-055039[1], para la administración de todas las facilidades de La Villa

---

[1] Lo anterior en virtud de la Ley para el Fomento y Desarrollo de la Industria Pesquera y la Acuicultura, *supra*, y el Reglamento para Establecer las Normas que Regirán la Administración y Utilización de las Facilidades Pesqueras del Programa para el Fomento, Desarrollo y Administración Pesquera del Departamento de Agricultura (Núm. 7626).

Pesquera La Parguera por un término de quince (15) años, incluyendo el área del muelle, para el cual le asignaron fondos para su rehabilitación. A tenor con dicho contrato, el Municipio fue autorizado para llevar a cabo los actos de dominio necesarios, judiciales y extrajudiciales, para dar continuidad a las actividades pesqueras, preservar la integridad de las facilidades y regular el uso de estas, incluyendo el establecer u ordenar la entrada y salida de terceros. Alegó además, que desde el 2017, la parte recurrida opera una pescadería y una cafetería en La Villa Pesquera La Parguera sin pagar renta ni tener derecho alguno para ello. Sostuvo que, la parte recurrida sustenta su derecho de posesión en unos endosos municipales que no constituyen negocios jurídicos válidos, toda vez que son incompatibles con la contratación gubernamental y en específico, la administración de dichas facilidades. Aseveró que, la parte recurrida ha retenido las aludidas facilidades alegando que tiene un endoso y concesión de parte del Municipio sin fecha de terminación para administrar y operar en la Villa Pesquera, así como una cafetería y permitiendo actividades ajenas a las operaciones propias de las facilidades pesqueras, entre ellas, el embarque y desembarque de turistas y la entrada de terceros no autorizados. Acotó que, el Municipio, en el ejercicio de los poderes y facultades como único administrador de dichas facilidades, le ha solicitado en varias instancias a la parte recurrida el cese de operaciones y el desalojo de dichas facilidades y esta ha hecho caso omiso poniendo en riesgo y afectando la actividad comercial pesquera en el área.

El 8 de septiembre de 2023, notificada el 11 de septiembre de 2023, el Tribunal de Primera Instancia emitió *Resolución* en la cual señaló juicio para el 31 de octubre de 2023 y ordenó a la Secretaría que se expidiera de inmediato los emplazamientos/citaciones unidos al expediente para su eventual diligenciamiento.

El 17 de septiembre de 2023, el señor Ramírez Jusino presentó *Contestación a Demanda y Reconvención*. El 18 de septiembre de 2023 el foro recurrido emitió *Resolución* mediante la cual tomó conocimiento de dicha incidencia procesal.

El DAPR presentó el 24 de septiembre de 2023 *Moción en Oposición a Contestación de Demanda y Reconvención*. El Tribunal de Primera Instancia, emitió *Resolución* en la cual indicó que se dispondrían de las posiciones de las partes en el juicio pautado previamente.

El 25 de septiembre de 2023, la parte recurrida presentó *Réplica a Moción en Oposición a Contestación a Demanda y Reconvención*. En igual fecha, el foro primario emitió dos Resoluciones, en las que, en esencia, se dio por enterado y señaló que dispondría de las mociones en el señalamiento de juicio pautado para el 31 de octubre de 2023.

El 13 de octubre de 2023, la parte recurrida incoó *Moción Solicitando Paralización*. El foro *a quo* emitió *Resolución* el 16 de octubre de 2023, mediante la cual se dio por enterado y consignó lo siguiente:

> Evaluada la moción presentada y el documento anejado a la misma, se ordena la paralización de los procedimientos en el presente caso. Esto hasta tanto se conozca la determinación a ser emitida por el Tribunal de Apelaciones en el caso MZ2023CV00707.
>
> De igual forma, se deja sin efecto el señalamiento pautado para el 31 de octubre de 2023, a las 9:00 a.m.

La parte peticionaria el 3 de junio de 2024, presentó *Moción para que se continúe con los Procesos*. Sobre el particular, la primera instancia judicial emitió *Resolución* el 4 de junio de 2024, en la cual señaló Vista en su Fondo para el 22 de julio de 2024.

La parte recurrida presentó *Moción de Réplica* el 11 de junio de 2024. Ese mismo día 11 de junio de 2024, el Tribunal de Primera Instancia dictó la *Resolución* que se transcribe a continuación:

Enterado.

Evaluada la Moción presentada, exponga su posición la parte demandante de epígrafe (Municipio de Lajas). Tenga quince (15) días para ello, so pena de desacato y/o sanciones.

Una vez la parte requerida cumpla con lo ordenado, el Tribunal dispondrá sobre el curso de acción a seguir en el presente caso.

De otra parte, en atención a lo informado por la representación legal de la parte demandada de epígrafe, en relación a su no disponibilidad en cuanto a la fecha de la vista pautada, se deja sin efecto la Vista señalada para el 22 de julio de 2024. Considerándose la posibilidad de señalar una Vista sobre el Estado de los Procedimientos para el mes de agosto. Fecha que oportunamente será notificada a las partes.

Inconforme con tal determinación, la parte peticionaria presentó el recurso de epígrafe y esgrimió el siguiente señalamiento de error:

Erró el Honorable Tribunal de Primera Instancia al no celebrar el juicio de desahucio en precario dentro de diez días (10) posteriores a la continuación de los procesos y manejar el asunto de manera ordinaria en vez de sumariamente.

El 20 de junio de 2024, la parte peticionaria presentó *Moción en Auxilio de Jurisdicción.* Mediante nuestra Resolución del 21 de junio de 2024 le concedimos a la parte recurrida, hasta el viernes 28 de junio de 2024, para que se expresara en torno al recurso de *Certiorari* y la *Moción en Auxilio de Jurisdicción.* Le apercibimos que transcurrido el término dispuesto, el recurso se entendería perfeccionado para su adjudicación final.

De otra parte, en cuanto a la *Moción Informativa* presentada el 18 de junio de 2024, así como la *Moción Informativa* incoada el 20 de junio de 2024 por la parte peticionaria, nos dimos por enterados en lo que respecta a la notificación del recurso y la *Moción en Auxilio de Jurisdicción.*

El 27 de junio de 2024 la parte recurrida compareció ante este foro revisor mediante *Moción en Cumplimiento de Orden y Desestimación.* En cuanto a la moción de desestimación del recurso,

declaramos la misma No ha Lugar, por entender que el mismo fue notificado oportunamente a la parte recurrida.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

## II

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1., dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

### B. Desahucio

Nuestro Tribunal Supremo ha expresado en torno al desahucio que, este es "el mecanismo que tiene el dueño o la dueña de un inmueble para recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna". *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020); *Payano v. SLG Cruz-Pagán*, 209 DPR 876 (2022). El desahucio puede ser solicitado mediante un proceso sumario u ordinario. *Adm. Vivienda Pública v. Vega Martínez,* 200 DPR 235, 240 (2018). El procedimiento de desahucio sumario está reglamentado por los Arts. 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. *Íd.*; *Payano v. SLG Cruz-Pagán*, supra; *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 9 (2016). Esta reglamentación responde al interés del Estado en atender expeditamente la reclamación del dueño de un inmueble, cuyo derecho a poseer y disfrutar su propiedad ha sido interrumpido. *Íd.*; *Cooperativa v. Colón Lebrón*, supra, pág. 820; *Adm. Vivienda Pública v. Vega Martínez,* supra, pág. 240. El objetivo de la acción de desahucio es recuperar la posesión

de hecho de un bien inmueble. *ATPR v. SLG Volmar-Mathieu,* supra, pág. 10. Según el Art. 620 del Código de Enjuiciamiento Civil, las personas que pueden instar una acción de desahucio son los dueños de la finca, sus apoderados, los usufructuarios o cualquier otro que tenga derecho a disfrutarla y sus causahabientes. 32 LPRA sec. 2821.

El Código de Enjuiciamiento Civil es el cuerpo legal que articula las normas vigentes sobre esta acción. 32 LPRA 2821, *et seq.* Con relación al proceso de apelación de un desahucio, la Ley de Desahucio contiene un procedimiento especial. *Acosta et al. v. S.L.G. Ghigliotti,* 186 DPR 984, 989 (2012).

De otra parte, el procedimiento sumario de desahucio está reglamentado en los Artículos 620 a 634 del Código de Enjuiciamiento Civil, 32 LPRA § 2821-2838. Es preciso señalar que, mediante la Ley Núm. 86-2011, se enmendó el Artículo 629 del Código de Enjuiciamiento Civil, 32 LPRA § 2831, con el fin de reducir el término para apelar una sentencia de desahucio.

Dicho Artículo dispone específicamente lo siguiente:

Las apelaciones deberán interponerse en el término de cinco (5) días contados desde la fecha del archivo en autos de la notificación de la sentencia, por las partes perjudicadas por la misma o sus abogados.

En el antes citado estatuto, el legislador plasmó su clara intención en la Exposición de Motivos, que en su parte pertinente dispone:

Las personas que optan por ofrecer sus viviendas para alquiler son selectivas en el proceso, con el fin de minimizar su riesgo como arrendador. A manera de ejemplo, una de las principales quejas de éstos es que el trámite de desahucio resulta muy extenso en los tribunales, debido a, entre otras cosas, constantes suspensiones, lo que resulta en consecuencias desfavorables para el arrendador.

Como bien se puede apreciar, el término jurisdiccional de treinta (30) días para apelar las determinaciones de los tribunales de primera instancia se redujo en la nueva ley a cinco (5) días.

Así, la sentencia de desahucio, de conformidad con el artículo 630 del Código de Enjuiciamiento Civil, es final y firme al expirar el término de cinco (5) días desde que se notifica la misma a los demandados. *González v. López*, 69 DPR 944, 947 (1949).

Por otro lado, el Tribunal Supremo de Puerto Rico en *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 241 (1992), señaló que la necesidad de que ocasionalmente el procedimiento sumario de desahucio se convierta en uno ordinario, no podía llevarlo a configurar una regla automática. A fin de cuentas, dentro del marco procesal sumario de la Ley de Desahucio, **el sano discernimiento judicial será la guía para prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones.**

En consonancia con lo anterior, [p]uesto que lo único que se busca recobrar [en la acción de desahucio] es la posesión, la Alta Curia ha expresado en "reiteradas ocasiones que en la acción sumaria debe limitarse la concurrencia o consolidación de otras acciones o defensas.[2] Por ello, cuando el demandado presenta otras defensas afirmativas relacionadas con la acción de desahucio, éste puede solicitar que el procedimiento se convierta al trámite ordinario. *Jiménez v. Reyes*, 146 DPR 657 (1998); *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 747-748 (1987)". *ATPR v. SLG Volmar-Mathieu*, supra, pág. 10.

Ahora bien, con relación a las defensas que pueden ser planteadas por la parte demandada, nuestra última instancia judicial ha reconocido que bajo la Ley de Desahucio estas "deberán ser alegadas oportunamente por el arrendatario, de manera que no dilate innecesariamente los procedimientos. Esta casuística arroja

---

[2] No obstante, el Art. 627 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2829, dispone que en los casos en que la demanda se base en la falta de pago del canon o precio convenido, el tribunal podrá "permitir la acumulación de una reclamación en cobro de dinero, fundamentada en la falta de pago del canon o precio en que se base la reclamación de desahucio, con esta última en el mismo procedimiento judicial sobre desahucio [...]".

una sola conclusión: **una vez esgrimidas estas defensas, el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario".** *Turabo Ltd. Partnership v. Velardo Ortiz*, supra, págs. 245-246.

Pertinente a la controversia que nos ocupa, es meritorio señalar que, desde tiempos inmemoriales, nuestra última instancia judicial ha puntualizado que en el trámite sumario deben considerarse estrictamente la recuperación de la posesión material en los casos determinados por ley. Sobre este particular, en *Fernández & Hno. V. Pérez*, 79 DPR 244, 247-248 (1956) el Alto Foro señaló que:

> La única función del procedimiento de naturaleza sumaria que establece la ley para el desahucio es recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna. **El beneficio de la economía y rapidez del trámite sumario se perdería si la acción no queda restringida a la consideración y resolución de la cuestión estricta para la que se ha creado: la recuperación de la posesión material en los casos determinados por la ley. De ahí que el tratamiento de todos los demás derechos y cuestiones accesorias o colaterales sólo corresponde a la acción ordinaria y que el único pronunciamiento en la sentencia de desahucio es si procede o no ordenar el desalojo.**

Por último, [e]s doctrina general establecida por el Alto Foro, que los conflictos de título no pueden dilucidarse en el juicio de desahucio por ser este uno de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ella. A tono con tal doctrina si un demandado en desahucio produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del demandante surge un conflicto de título que hace improcedente la acción de desahucio. Tal conflicto, debe ser dilucidado en el juicio declarativo correspondiente; **pero no se debe extender este principio a casos en que no hay posibilidad**

**de título en favor de la parte demandada.** (Citas omitidas). *C.R.U.V. v. Román*, 100 DPR 318, 321, 322 (1971). (*Énfasis nuestro*).

### C. Contratación gubernamental

La Constitución de Puerto Rico establece que "[so]lo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley". Art. VI, Sec. 9, Const. PR., LPRA, Tomo 1, ed.2016, pág. 444. En virtud de este mandato constitucional, [nuestra Alta Curia ha] sido consecuente al exigir el manejo ético y apropiado de los fondos públicos. *Vicar Builders v. ELA et al.*, 192 DPR 256 (2015); *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448 (2014); *Jaap Corp. v. Depto. Estado et al.*, 187 DPR 730 (2013). Ello, en miras de que "[l]a buena administración de un gobierno es una virtud de democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa". *Génesis Security v. Depto. Trabajo*, 204 DPR 986, 997 (2020).

En Puerto Rico, la contratación gubernamental de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *Mun. de Aguada v. W Construction, LLC y otro*, 2024 TSPR 69, 213 DPR ____ (2024); *St. James Sec. v. AEE*, 2023 TSPR 149, 213 DPR __ (2023); *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 793-797 (2023); *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018). Por lo tanto, las normas reconocidas sobre los contratos han de aplicarse rigurosamente, pues persiguen el fin de proteger los intereses y dinero del pueblo. *SLG Ortiz-Mateo v. ELA, supra; Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 729 (2018). Así, en *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37, 54 (1988), nuestro Tribunal Supremo enumeró por primera vez los requisitos que todo

contrato gubernamental debe cumplir. Estos son: (1) reducirse a escrito; (2) mantener un registro que establezca su existencia; (3) remitir copia a la Oficina del Contralor de Puerto Rico, y (4) acreditar que se realizó y otorgó quince días antes. Véanse, además: *SLG Ortiz-Mateo v. ELA*, supra; *Génesis Security v. Depto. Trabajo*, 204 DPR 986, 998 (2020); *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530, 537 (2011).

### D. Deferencia al Tribunal de Primera Instancia

Según es sabido, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219, (2021); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

Es correcto que los tribunales de instancia poseen el poder inherente para vindicar la majestad de la ley y para hacer efectiva su jurisdicción, pronunciamientos y órdenes. El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. Es por ello que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. (Citas omitidas). *In re Collazo I,* 159 DPR 141, 150 (2003). Ahora bien, el Tribunal Supremo de Puerto Rico ha indicado que no intervendrá con dicha facultad de los tribunales de instancia, "excepto cuando sea absolutamente necesario con el propósito de evitar una flagrante injusticia". *Pueblo v. Vega, Jiménez,* 121 DPR 282, 287 (1988).

Esbozada la normativa jurídica que enmarca la controversia de epígrafe procedemos a resolver.

**III**

En su único señalamiento de error, la parte peticionaria arguye que erró el Tribunal de Primera Instancia al no celebrar el juicio de desahucio en precario dentro de diez (10) días posteriores a la continuación de los procesos y manejar el asunto de manera ordinaria en vez de sumariamente. Colegimos que le asiste la razón.

Tal y como se desprende del tracto procesal previamente esbozado, el 29 de agosto de 2023, la parte peticionaria presentó una *Demanda* de Desahucio en precario, en contra del señor Harrison Ramírez Jusino; y la Asociación de Pescadores Unidos de La Parguera, Inc. (en adelante, parte recurrida). En apretada síntesis, la parte peticionaria alegó que, el señor Ramírez Jusino ocupa un terreno que se encuentra arrendado por el DAPR a favor

del Municipio; sin derecho alguno y sin el pago de un canon de arrendamiento. Lo anterior, en violación a las leyes de contratación gubernamental.

El 17 de septiembre de 2023, la parte recurrida presentó ante el foro primario *Contestación a Demanda y Reconvención.* En la *Contestación a la Demanda,* la parte recurrida aceptó que no paga canon de arrendamiento y alegó que el pago de la renta nunca se le ha requerido por la parte peticionaria.

Reiteramos que estamos estrictamente ante un pleito sumario de desahucio en precario en el cual se alega la posesión ilegal de la parte recurrida de una propiedad pública, la cual está sujeta a los rigores de la contratación gubernamental.

En lo que a la reconvención respecta, en esencia, la parte recurrida le hizo una serie de imputaciones al actual Alcalde del Municipio de Lajas, Hon. Jayson Martínez Maldonado y le reclamó, entre otros, daños a su reputación como comerciante, merma en sus ingresos, y alegó temer por su seguridad. Luego de una minuciosa revisión de las alegaciones de la reconvención, nos percatamos que las alegaciones, en su mayoría, son idénticas a las alegaciones de la *Demanda Enmendada* interpuesta por la parte recurrida ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en el caso con identificación alfanumérica MZ202300707.[3]

---

[3] Tomamos conocimiento de la misma a través del Sistema Unificado para el Manejo y Administración de Casos (SUMAC) del Poder Judicial, así como de la *Sentencia* emitida el 27 de marzo de 2024 en el recurso KLAN20230091 por un Panel Hermano de este Tribunal, anejada al recurso que nos ocupa. Específicamente, la primera alegación de la reconvención del caso que nos ocupa, es idéntica a la segunda alegación de la *Demanda Enmendada del caso MZ202300707.* La cuarta alegación de la reconvención es idéntica a la alegación número uno de la parte intitulada en la *Demanda Enmendada* como *Hechos Pertinentes al Caso.* La quinta alegación de la reconvención es idéntica a la segunda alegación de la *Demanda Enmendada*; la sexta alegación de la reconvención, es idéntica a la tercera alegación de la *Demanda Enmendada*, la séptima alegación de la reconvención es idéntica a la cuarta de la *Demanda Enmendada*; la octava alegación de la reconvención es idéntica a la quinta de la *Demanda Enmendada*; la novena alegación de la reconvención es idéntica a la séptima de la *Demanda Enmendada*; la décima alegación de la reconvención es idéntica a la octava de la *Demanda Enmendada*, la undécima alegación de la reconvención es idéntica a la novena de la *Demanda Enmendada*; la décimo tercera alegación de la reconvención es idéntica a la alegación dúo décima de la *Demanda Enmendada.*

Lo anterior, nos lleva forzosamente a concluir que la parte recurrida ha provocado con sus actuaciones una duplicidad procesal al presentar el mismo reclamo ante dos foros de manera simultánea, con la consecuencia nefasta de retrasar los procedimientos del presente caso sumario.

Como señalamos previamente, nuestra última instancia judicial ha puntualizado que en el trámite sumario deben considerarse estrictamente la recuperación de la posesión material en los casos determinados por ley. Sobre este particular, en *Fernández & Hno. V. Pérez*, 79 DPR 244, 247-248 (1956) el Alto Foro señaló que:

> La única función del procedimiento de naturaleza sumaria que establece la ley para el desahucio es recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna. **El beneficio de la economía y rapidez del trámite sumario se perdería si la acción no queda restringida a la consideración y resolución de la cuestión estricta para la que se ha creado: la recuperación de la posesión material en los casos determinados por la ley. De ahí que el tratamiento de todos los demás derechos y cuestiones accesorias o colaterales sólo corresponde a la acción ordinaria y que el único pronunciamiento en la sentencia de desahucio es si procede o no ordenar el desalojo.**

Si bien es cierto que, como regla general, este foro revisor evita intervenir con el manejo de los casos por parte del foro primario, en esta ocasión, los fines de la justicia así lo requiere. Razonamos que, la Juzgadora de instancia se excedió en el ejercicio de su discreción al no celebrar la vista en su fondo con la premura requerida por ley, y retrasar irrazonablemente el pleito, todo ello, en detrimento de la protección del erario público. En fin, coincidimos con la parte peticionaria en que el error señalado, en efecto, fue cometido.

**IV**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca el dictamen recurrido. Consecuentemente, se devuelve el caso al foro de instancia para que **sin dilación alguna**

proceda a calendarizar y celebrar la vista de desahucio sumario dentro del término de **diez (10) días** contado a partir de la notificación de esta Sentencia.

En lo que respecta a la reconvención interpuesta por la parte recurrida, por estar estrechamente relacionada con el pleito MZ2023CV00707, el foro primario deberá ordenar el traslado de la misma, a los fines de que se atienda de manera conjunta con dicho caso, que se ventila ante la Sala Superior de Mayagüez.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[4]

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.